**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIRANDA BARBOUR, | CIVIL ACTION NO. 1:25-CV-00379 |
| Plaintiff, | |
| v. | (MEHALCHICK, J.) |
| KENNETH JONES, et al., | |
| Defendants. | |

**MEMORANDUM**

On March 3, 2025, Plaintiff Miranda Barbour ("Barbour") initiated this action by filing a complaint against Defendants Kenneth Jones ("Jones"), Wendy Nicholas ("Nicholas"), Stephen Petersheim ("Petersheim"), David Radziewicz ("Radziewicz"), Angel Baez-Sprague ("Baez-Sprague"), James Savage ("Savage"), Lt. Rohland ("Rohland"), Lt. Knight ("Knight"), Valerie Gordner ("Gordner"), Gabriella Cuozzo ("Cuozzo"), David Spring ("Spring"), Wertman,[1] and a John/Jane Doe (collectively, "Defendants"). (Doc. 1). Before the Court is the report and recommendation of Magistrate Judge Susan E. Schwab (Doc. 19) recommending that the Court grant in part and deny in part Radziewicz, Petersheim, Nicholas, Spring, Cuozzo, Gordner, Wertman, Baez-Sprague, Savage, Rohland, and Knight's (collectively, "Moving Defendants") pending motion to dismiss. (Doc. 9). On March 6, 2026, Barbour filed a timely objection. (Doc. 20). On March 9, 2026, Nicholas, Petersheim, and Radziewicz (collectively, "Objecting Defendants") filed a timely objection. (Doc. 23).

---

[1] The Court notes that Wertman's name is spelled as "Wartman" in the complaint; however, the correct spelling is included in Wertman's filings and the Court will use that spelling here. (Doc. 1, ¶ 16; Doc. 9, at 1; Doc. 11, at 2).

Based on the Court's review of the relevant filings along with the report, the Court adopts the report in full, overrules the objections, and grants in part and denies in part Moving Defendants' motion to dismiss.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the complaint and, for the purposes of the instant matter, is taken as true. (Doc. 1). Barbour is a thirty-year-old woman incarcerated at the Pennsylvania State Correctional Institute at Muncy ("SCI Muncy"). (Doc. 1, ¶ 4). The state of Pennsylvania employed Jones as a parole officer at all times relevant to this complaint. (Doc. 1, ¶ 5). Beginning around 2023, Jones began to take a personal interest in Barbour while Barbour worked a job in SCI Muncy's Career Services Building and engaged in what Barbour describes as "grooming behaviors common to sexual predators." (Doc. 1, ¶¶ 27-28). In or around April 2023, Jones kissed Barbour while she was alone with him in his office and continued to do so. (Doc. 1, ¶¶ 31-32). Shortly thereafter, Jones demanded that Barbour have sex with him and continued to pressure her until she performed oral sex on him. (Doc. 1, ¶¶ 32, 34). Barbour felt she could not say no to Jones. (Doc. 1, ¶ 33). Thereafter, Jones began to pressure Barbour to have oral, vaginal, and anal sex with him, and Barbour continued to feel as though she could not say no. (Doc. 1, ¶¶ 35-36, 41). Barbour feared repercussions if she told anyone what was happening. (Doc. 1, ¶ 38). Beginning in summer 2023, Jones demanded sex from Barbour almost every day. (Doc. 1, ¶ 39).

Barbour alleges that due to their offices' proximity to Jones's office and their movements through the office, Cuozzo, Gordner, Spring, and Wertman, other prison officials, would have heard Jones and Barbour's interactions and would have known what was happening to Barbour. (Doc. 1, ¶¶ 50-54). Despite this, Cuozzo, Gordner, Spring, and

Wertman did not report the abuse despite being required to do so. (Doc. 1, ¶¶ 56-58). Around summer 2023, Baez-Sprague, a Prison Rape Elimination Act ("PREA") compliance officer at SCI Muncy, ordered Barbour to report to the medical department for a pregnancy test, indicating that he knew about the abuse. (Doc. 1, ¶¶ 62-64). Aside from ordering the pregnancy test, Baez-Sprague made no effort to ask about or investigate the abuse. (Doc. 1, ¶ 65). In or around October 2023, Savage, SCI Muncy's Security Captain, and Rohland, a Security Lieutenant, summoned Barbour to the Security Office to ask about a report an undisclosed individual made about Barbour and a staff member, but Barbour was afraid to tell them about Jones's abuse due to fear of repercussions. (Doc. 1, ¶¶ 68-70). Savage and Rohland made little to no attempt to reassure Barbour that she would not get in trouble for reporting sexual abuse, and the meeting only lasted for a few minutes. (Doc. 1, ¶¶ 69-71). Savage and Rohland did not separate Jones and Barbour despite being required to do so after receiving a report of possible inappropriate activity. (Doc. 1, ¶¶ 72-73). Baez-Sprague would also have received the report Savage and Rohland received; however, despite Baez-Sprague walking through the Counseling Services Building multiple times a week, Baez-Sprague never checked in or intervened when Barbour was alone with Jones in Jones's office. (Doc. 1, ¶¶ 74-78).

Around October 2023, Knight, a corrections lieutenant, began patrolling the Counseling Services Building once or twice per week and was present when Barbour was alone with Jones in his office. (Doc. 1, ¶¶ 79, 81), Despite this, Knight did not intervene. (Doc. 1, ¶ 81). During one of Knight's patrols, Barbour heard Knight make a comment to Gordner about staff members "keep[ing] their dicks in their pants," implying that he and Gordner knew about the abuse. (Doc. 1, ¶ 80). During this time, Jones began reading

Barbour's DOC files, including her confidential medical and mental health records, and got angry with her because Jones believed she had hinted about the abuse to her mental health counselor. (Doc. 1, ¶¶ 124-30). Jones threatened to get Barbour in trouble if she told her counselor about the abuse. (Doc. 1, ¶ 127). Jones continued to review her mental health records as he continued abusing her from April 2023 through March 2024. (Doc. 1, ¶¶ 119, 132).

In November 2023, Barbour met with Savage and Rohland and asked to be removed from her job in the Counselor Services Building because of an "inappropriate situation" with Jones. (Doc. 1, ¶¶ 82-88). Savage and Rohland did not ask what she meant by "inappropriate situation," and Barbour believes they knew what she meant. (Doc. 1, ¶¶ 88-89). Barbour asked Savage and Rohland not to tell anyone that she had requested a job change. (Doc. 1, ¶ 87). The meeting lasted only a few minutes, and Savage removed Barbour from her job in the Counseling Services Building. (Doc. 1, ¶¶ 91-92, 96). However, neither Savage nor Rohland took any other action as a result of the meeting. (Doc. 1, ¶ 96).

After Barbour left her job in the Career Services Building, Jones began stalking Barbour and sending her multiple emails a day on the prison email system. (Doc. 1, ¶¶ 98-101). In or around December 2023 or January 2024, Jones told Barbour that he knew she had asked to be reassigned to a new job and began threatening her and threatening to harm himself. (Doc. 1, ¶¶ 103-06). Savage was responsible for detecting and monitoring inappropriate emails, but he failed to intervene. (Doc. 1, ¶ 102).

On March 28, 2024, Barbour requested a meeting with Savage during which Barbour made a formal PREA report to Savage and Rohland and disclosed Jones's sexual abuse, stalking, and harassment. (Doc. 1, ¶¶ 109-10). During the meeting, Barbour asked Savage

4

why he did not intervene sooner. (Doc. 1, ¶ 111). Savage responded, "we were waiting for you to hang yourself," and admitted that he told Jones about Barbour's request for a job transfer. (Doc. 1, ¶¶ 111-14). As a result of Barbour disclosing Jones's abuse, SCI Muncy suspended him without pay pending the outcome of a PREA investigation and Jones was criminally charged for sexually assaulting Barbour. (Doc. 1, ¶¶ 115-18).

Nicholas, Petersheim, Radziewicz, Baez-Sprague, and Savage were all prison officials responsible for enforcing PREA regulations preventing prison sexual assault, knew or should have known about the alleged sexual assault before Barbour officially disclosed it, and did not intervene. (Doc. 1, ¶¶ 133-35). Barbour's repeated sexual assaults were preceded by two other cases of SCI Muncy staff sexually assaulting inmates within the three years leading up to Jones assaulting Barbour. (Doc. 1, ¶ 136). SCI Muncy officials, including Objecting Defendants, investigated these assaults but did not make any changes to prevent future assaults such as providing further training, removing blind spots in the prison's camera system, or improving investigative practices. (Doc. 1, ¶¶ 136-48).

On March 3, 2025, Barbour filed a complaint alleging six counts under state and federal law. (Doc. 1). In Count I, Barbour alleges Jones is liable under 42 U.S.C. § 1983 for violations of the Eighth Amendment. (Doc. 1, ¶¶ 149-50). In Count II, Barbour alleges Moving Defendants are liable under 42 U.S.C. § 1983 for violations of the Eighth Amendment. (Doc. 1, ¶¶ 151-55). In Count III, Barbour alleges Jones and a Jane/John Doe are liable under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment right to privacy. (Doc. 1, ¶¶ 156-57). In Count IV, Barbour alleges Jones is liable for battery. (Doc. 1, ¶¶ 158-59). In Count V, Barbour alleges Jones is liable for intentional infliction of emotional

distress. (Doc. 1, ¶¶ 160-61). In Count VI, Barbour alleges Moving Defendants are liable for negligence. (Doc. 1, ¶¶ 162-67).

On May 9, 2025, Moving Defendants moved to dismiss Count II against Nicholas, Petersheim, Radziewicz, Cuozzo, Wertmen, and Spring ("Section 1983 Movants") due to lack of personal involvement and Count VI against Moving Defendants under the doctrine of sovereign immunity. (Doc. 9; Doc. 11, at 6). On February 23, 2026, Judge Schwab issued the report and recommendation recommending that the Court deny in part and grant in part Moving Defendants' motion. (Doc. 19). On February 23, 2026, Barbour filed an objection. (Doc. 19). On March 9, 2026, Objecting Defendants filed an objection.[2] (Doc. 23). On March 13, 2026, the Court stayed this case pending a decision from the Pennsylvania Supreme Court in *City of Philadelphia v. J.S.*, 316 A.3d 619 (Pa. 2024). (Doc. 24). On March 26, 2026, Barbour informed the Court that the Pennsylvania Supreme Court had resolved *J.S.* (Doc. 25). Thus, the Court now lifts the stay and resolves this matter.

## II. LEGAL STANDARDS

### A. A DISTRICT COURT'S REVIEW OF A REPORT AND RECOMMENDATION

"A district court may 'designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition' of certain matters pending before the court." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(B)). Within fourteen days of being served a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28

---

[2] The Court notes that Objecting Defendants incorrectly filed their objection as a motion for reconsideration; however, the filing is captioned as an objection and is argued as an objection. (Doc. 23, at 1).

U.S.C. § 636(b)(1). When a party timely files objections, the district court is to conduct a *de novo* review of the challenged portions of the Magistrate Judge's findings unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984); 28 U.S.C. § 636(b)(1). The Court may then "accept, reject, or modify, in whole or in part, the findings and recommendations." 28 U.S.C. § 636(b)(1). "Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Rahman v. Gartley*, No. CV 3:23-363, 2024 WL 555894, at *1 (M.D. Pa. Feb. 12, 2024) (citing *United v. Raddatz*, 447 U.S. 667, 676 (1980)).

    B.    42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of

7

the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**III. DISCUSSION**

Judge Schwab recommended that the Court deny Moving Defendants' motion to dismiss regarding Count II but dismiss Count VI. (Doc. 19, at 41). Objecting Defendants objected to Judge Schwab's recommendations regarding Count II and Barbour objected to the report's recommendations regarding Count VI. (Doc. 19; Doc. 23).

A. COUNT VI IS DISMISSED AGAINST MOVING DEFENDANTS.

In Count VI, Barbour alleges Moving Defendants are liable for negligence. (Doc. 1, ¶¶ 162-67). Judge Schwab determined that Moving Defendants are immune from these claims under the doctrine of sovereign immunity. (Doc. 19, at 36-41). Judge Schwab concluded that although Pennsylvania has an exception to sovereign immunity for some claims involving sexual assault, the exception only applies to sexual assaults involving a minor. (Doc. 19, at 36-41). Barbour objected to Judge Schwab's ruling, arguing that Judge Schwab interpreted Pennsylvania's sexual assault exception too narrowly. (Doc. 20, at 4-13). In her objection, Barbour noted that the Pennsylvania Supreme Court recently agreed to hear a case addressing the sexual assault exception in *City of Philadelphia v. J.S.*, 316 A.3d 619 (Pa. 2024). (Doc. 20, at 11-12). However, on March 26, 2026, the Pennsylvania Supreme Court issued an opinion in *J.S.* interpreting the sexual assault exception in line with Judge Schwab's analysis. *City of Philadelphia v. J.S.*, No. 34 EAP 2024, 2026 WL 827621 (Pa. Mar. 26, 2026). On March 27, 2026, Barbour filed a status report conceding that "[t]he Pennsylvania Supreme Court's ruling in *J.S.* forecloses [her] negligence claims" and withdrawing her objection. (Doc. 25, at 1). Accordingly, the Court **ADOPTS** Judge Schwab's recommendation regarding Count VI

(Doc. 19, at 36-41), **OVERRULES** Barbour's objection (Doc. 20), and **DISMISSES** Count VI.[3] (Doc. 1, ¶¶ 162-67).

B. MOVING DEFENDANTS' MOTION TO DISMISS COUNT II IS DENIED.

In Count II, Barbour alleges that Section 1983 Movants are liable under 42 U.S.C. § 1983 for violations of the Eighth Amendment. (Doc. 1, ¶¶ 151-55). Judge Schwab determined that Barbour sufficiently states an Eighth Amendment claim against Section 1983 Movants, including against Objecting Defendants. (Doc. 19, at 23-42). Judge Schwab rejected Moving Defendants' argument that the Court must dismiss Count II against Objecting Defendants because Barbour does not allege that Objecting Defendants had personal involvement in an alleged constitutional violation. (Doc. 11, at 7-10; Doc. 19, at 23-42).

Judge Schwab found that Barbour alleges that Objecting Defendants were responsible for implementation of PREA requirements, training, and supervision of all staff. (Doc. 19, at 26). Judge Schwab further determined that Barbour alleges that Objecting Defendants were aware of two investigations into similar sexual assaults at SCI Muncy, were involved in the investigations, and were aware of the policies, practices, and inadequate training and supervision that enabled sexual assaults at SCI Muncy. (Doc. 19, at 26). Judge Schwab concluded that Barbour's allegations are sufficient to state a claim because she alleges 1) specific practices which led to her assault such as insufficient camera coverage, a general failure to report sexual assault, and a culture of victim-blaming, impunity, and turning a blind eye, 2) that Objecting Defendants were aware that these practices created an unreasonable

---

[3] Because Barbour concedes that Count VI is foreclosed by the doctrine of sovereign immunity, the Court dismisses Count VI with prejudice. (Doc. 25, at 1); *see Jones v. Delaware Health*, 709 F. App'x 163, 164 (3d Cir. 2018)(nonprecedential) (noting that amendment is futile where claims are barred by sovereign immunity).

risk of sexual assault, 3) that Objecting Defendants were indifferent to that risk, and 4) that the practices led to Barbour's assaults. (Doc. 19, at 27-31). Objecting Defendants urge the Court to reject Judge Schwab's recommendation, arguing that Judge Schwab erroneously found personal involvement because 1) Barbour was assaulted in a private office so practices involving insufficient camera coverage did not contribute to her assault, 2) the complaint does not allege a failure to report, victim blaming, impunity or turning a blind eye to sexual assault, and 3) past incidents of sexual assault did not make Objecting Defendants aware of the risks of sexual assault. (Doc. 23, at 7-23). The Court agrees with Judge Schwab's conclusions and overrules Objecting Defendants' objection. (Doc. 23).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "It is well-settled that prison officials have a duty under the Eighth Amendment to 'take reasonable measures to guarantee the safety of inmates.'" *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240, 245 (3d Cir. 2005) (nonprecedential) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prison official violates the Eighth Amendment by being deliberately indifferent to risks to a plaintiff's safety, including by being deliberately indifferent to a risk of a plaintiff being sexually assaulted. *See White v. Ottinger*, 442 F. Supp. 2d 236, 245 (E.D. Pa. 2006). Eighth Amendment claims against prison officials must be brought through Section 1983, and to state a Section 1983 Eighth Amendment claim, the plaintiff must allege a defendant had "either actual contemporaneous knowledge of or any personal involvement in any violation of her constitutional rights." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

The Third Circuit has developed the following test to determine whether a prison supervisor had sufficient personal involvement to be liable under Section 1983:

> [T]he plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

A plaintiff may meet this test by either 1) showing that a defendant failed to respond to a pattern of past injuries similar to the plaintiff's or 2) showing that the plaintiff was subject to a "great and . . . obvious" risk of harm. *Teets v. Wetzel*, 630 F. Supp. 3d 679, 687 (W.D. Pa. 2022)

The Court agrees with Judge Schwab that Barbour alleges sufficient facts to plead supervisor liability at this early stage. (Doc. 19, at 27-31). Barbour alleges that Objecting Defendants were specifically entrusted with ensuring PREA compliance at SCI Muncy. (Doc. 1, ¶ 134). The PREA tasks prison officials, such as Objecting Defendants, with preventing prison sexual assaults. 34 U.S.C.A. § 30301. Barbour further alleges that Objecting Defendants were personally involved with investigations into two separate sexual assaults in SCI Muncy committed by SCI Muncy staff. (Doc. 1, ¶ 140). Barbour identifies specific shortcomings at SCI Muncy, including a lack of video surveillance coverage, which Barbour alleges Objecting Defendants knew created an unreasonable risk of sexual assault based on their experience investigating prior, similar assaults. (Doc. 1, ¶¶ 142-44).

Objecting Defendants posit that the Court should disregard Barbour's claims about video camera surveillance because it would not have prevented her sexual assaults. (Doc. 23, at 6-7). Objecting Defendants made this same argument in support of their motion to dismiss

and rely on summary judgment decisions.[4] (Doc. 15, at 8-9) (citing *Bowen v. City of Manchester,* 966 F.2d 13 (1st Cir. 1992); *Cruise v. Marino,* 404 F. Supp. 2d 656, 663 (M.D. Pa. 2005)). These cases involved courts analyzing a post-discovery record to determine the efficacy of increased camera coverage. *See Bowen,* 966 F.2d at 16; *see also Cruise,* 404 F. Supp. 2d at 662. At the dismissal stage, the Court has no such record and "must 'accept as true all of the allegations contained in a complaint,' make all reasonable inferences in favor of the plaintiff, and refrain from engaging in any credibility determinations." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.,* 839 F.3d 242, 256 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Accordingly, the Court must accept as true that SCI Muncy had insufficient camera coverage which substantially increased the risk of sexual assaults and that Objecting Defendants were aware of this deficiency based on their involvement in investigations into past sexual assaults at SCI Muncy. (Doc. 1, ¶¶ 142-44).

Objecting Defendants also aver that the Court should disregard Barbour's contention that Objecting Defendants knew that Barbour risked sexual assault because of a "[g]eneral failure to report abuse due to a culture of victim-blaming, impunity, and turning a blind eye." (Doc. 23, at 7-13). According to Objecting Defendants, after Barbour disclosed Jones's abuse, SCI Muncy officials immediately took disciplinary action and Barbour's allegations that SCI Muncy staff should have known about the alleged abuse sooner are based on pure speculation and conclusory assertions. (Doc. 23, at 7-13). However, at this stage, the Court finds that Barbour sufficiently alleges that Objecting Defendants knew, based on their past

---

[4] Objecting Defendants also rely on *Doe A.F. v. Lyft, Inc.,* No. CV 23-3990-KSM, 2024 WL 3497886, at *1 (E.D. Pa. July 19, 2024) which, while decided at the pleadings stage, involved negligence claims against a private ride-share corporation and not Eighth Amendment claims against prison officials responsible for the wellbeing of prisoners.

investigations into sexual assault, that SCI Muncy had improper training and supervision regarding sexual assault and that these shortcomings manifested in SCI Muncy staff failing to intervene while Jones was assaulting Barbour. (Doc. 1, ¶¶ 50-78, 81, 145-48).

Barbour alleges that SCI Muncy staff were near Jones's office while Barbour was alone with Jones and knew that sexual assault was occurring because SCI Muncy staff 1) ordered Barbour to take a pregnancy test, 2) made comments implying they knew about the abuse, and 3) received reports about the abuse. (Doc. 1, ¶¶ 50-78, 81, 145-48). Barbour alleges that despite this, SCI Muncy staff repeatedly failed to act. (Doc. 1, ¶¶ 58, 66, 81, 96, 108). According to Barbour, this failure was a continuation of a pattern of SCI Muncy staff failing to intervene despite knowing about sexual assault. (Doc. 1, ¶ 146). Barbour alleges Objecting Defendants knew about this pattern based on their past investigations, and Objecting Defendants did not implement any changes to end the pattern. (Doc. 1, ¶¶ 145-48). Accordingly, the Court agrees with Judge Schwab that Barbour properly alleges Objecting Defendants had personal involvement and were deliberately indifferent. (Doc. 19, at 23-31). As determined by Judge Schwab, Barbour identifies specific policies or practices Objecting Defendants failed to employ and she alleges that 1) the policy or practice created an unreasonable risk of repeated sexual assault, 2) Objecting Defendants were aware of that risk, 3) Objecting Defendants were indifferent to that risk, and 4) the risk led to Jones repeatedly sexually assaulting Barbour. (Doc. 19, at 23-31); *see Beers-Capitol*, 256 F.3d at 134; *see also Teets*, 630 F. Supp. 3d at 687. Barbour makes this showing by alleging that Objecting Defendants failed to respond to a pattern of past sexual assaults like Barbour's. (Doc. 1, ¶¶ 145-48); *see Teets*, 630 F. Supp. 3d at 687 (noting that a plaintiff may state a Section 1983 claim against a prison supervisor by alleging the supervisor failed to respond to a pattern of

13

constitutional injuries similar to the plaintiff's). Accordingly, the Court **ADOPTS** the report's recommendations regarding Count II (Doc. 19, at 21-36) and **OVERRULES** Objecting Defendants' objection. (Doc. 23).

## IV. CONCLUSION

For the foregoing reasons, the stay in this matter is **LIFTED**. (Doc. 24). The Court **ADOPTS** the report **in full** as a decision of the Court. (Doc. 19). The Court **OVERRULES** Barbour and Objecting Defendants' objections.[5] (Doc. 20; Doc. 23). Moving Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 9). The Court **GRANTS** Moving Defendants' motion as to Count VI and Count VI, and these counts are **DISMISSED with prejudice**. (Doc. 1, ¶¶ 162-67). Moving Defendants' motion is **DENIED** in all other respects.

An appropriate Order follows.

Dated: March 31, 2026

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[5] Because the Court overrules Objecting Defendants' objection, the Court **DENIES** Barbour's request to file a response to the objection by April 10, 2026. (Doc. 25, at 2).